and Mr. Davenport is appearing remotely. Mr. Davenport, can you hear us? Yes, I can. Thank you for having me, Your Honors. Okay. And then you have reserved one minute for rebuttal. Is that correct? That is correct. Okay. You may proceed when you're ready. May it please the Court. Thank you for allowing me to place my arguments on the record on behalf of my client, Austin Harig. We believe that the evidence viewed in the light most favorable to the plaintiff clearly shows that there are tribal issues of fact that the district court either ignored or didn't give proper credit to in determining whether or not this case should move forward to trial. The critical issue here is whether or not the police officers had probable cause to arrest Mr. Harig on August 25th of 2016 based on a supporting deposition from an individual named Zachary Garlick. We submitted to the district court and we submit here on appeal that this statement alone, without any corroborating evidence whatsoever, did not provide the police officers with probable cause. And the first reason why is because Zachary Garlick, when he first started speaking with the police officers, he gave a false name. He gave the officers the name of Zachary Drake. And we know this because one of the police officers, Officer McCormick, actually wrote down in a notebook some notes regarding some of her interviews with witnesses. She wrote down Zachary Drake and after Zachary Garlick was pulled to the side and interrogated and questioned by multiple police officers away from the rest of the group of witnesses, he ended up signing that supporting deposition with his actual name, Zachary Garlick. Do you mind focusing or at least moving to the sham issue of fact doctrine? Sure. So, Your Honors, in the district court's decision, many of the statements from Mr. Harig's affidavit were struck or not considered because the district court found that those statements contradicted Mr. Harig's prior testimony in a 50H deposition. Some of the contradictions, frankly, we just don't agree with and we don't believe are properly supported by the record. One is that the district court struck from Mr. Harig's affidavit his statement that he was not involved in this fight. It's not clear to me that the district court struck things from Mr. Harig's affidavit. There were areas where there was some arguable disagreement. There was more elaboration in the deposition and what the court said each time, well, on a number of times, was I accept the deposition. And some of the instances, the affidavit statements were more conclusory, more general, and there was more detail in the affidavit. So I don't know that she struck. Well, she certainly didn't strike the whole thing. I mean, she granted the motion, which was a motion to strike, but it was more that she was giving more weight to the deposition. And I guess my question is, does it matter? Is there anything that in the affidavit that would make a difference where she prefer the deposition testimony over the affidavit? Well, I do think that there are multiple statements that Mr. Harig made in his affidavit that it seems that they weren't considered by the district court. One of them being that Mr. Harig said in his affidavit that he actually identified two police officers who were investigating these other individuals, these other assailants who were allegedly involved in this gang assault. And I think that's really important to remember. Well, what difference does it make? In other words, yes, let's assume as a factual matter that there were others involved. I think it's pretty clear that there were others involved. This was a fight. There were 15 people there. It sounds like it was a riot. But does that undermine whether there was probable cause to arrest Mr. Harig? Well, in terms of the probable cause argument, I don't know that it necessarily does. I do think, though, that it goes. My point is, is I don't know how meaningful it is that the motion to strike was granted in part because even if you well, I guess even if you take into account some of the statements that were stricken, would it would it matter to the summary judgment question? And so the first one you identify, I don't. And I think you've now agreed that it doesn't really matter. Well, I agree that it doesn't necessarily matter for probable cause, but I do think that it matters with malice. And the reason that I say that is because I think it goes to at least circumstantially show that these police officers were focused on arresting Austin. Harry, they were not focused at all on finding the other individuals who were involved in this fight. It goes to show that. But if there was probable cause, if there was probable cause to arrest Mr. Harig, does it matter that they were focusing on him? No, it wouldn't, because probable cause is an absolute defense for malicious prosecution. But we also argue that there is. I mean, so it's two thirty in the morning. There's someone badly injured lying on the bottom of the stairs. His eyes are all puffed up. It's a chaotic scene. There are 15 or more people there. Eight police officers arrive. And then and then at some point, Zachary signs this statement saying that Austin threw me down the stairs. He was fighting my my cousin, Brett. Are you saying that no reasonable police officer could have believed that there was probable cause to arrest Mr. Harig in those circumstances, even assuming there are others saying he didn't do anything, even assuming there are bystanders shouting he didn't do anything? Is it is it so clear? I mean, that's because it's it's whether there's arguable probable cause, right? I agree with you, Judge, that it does matter about arguable probable cause. But I would also submit to the court, you know, that if there was no evidence before this court that this statement was improperly coerced, that this would probably be an entirely different analysis. But we believe that there is evidence before this court to show that Zachary Garlick was coerced into the statement. What is the evidence of coercion? Sure. So we had Officer Bannister during his deposition saying that he he discussed with Zachary Garlick and outstanding warrants. And it was written down in Officer McCormick's notes on her investigation that they knew about Zachary Garlick's arrest warrant. We believe that they pulled Zachary Garlick off to the side. And Mr. Herrick submits in his affidavit that he heard the officers yelling at him for over 10 minutes, 15 minutes, you know, trying to get Zachary Garlick to sign off on the statement. After screaming and yelling at Zachary Garlick about his arrest warrants, letting them know that they know about his arrest warrants, but they just want a statement from him to help his cousin. And then coming back to the porch and arresting Mr. Herrick. What about the statement? You know, Mr. Zachary was interviewed five days later, and he pretty much confirmed what he had told the officers. He confirmed that that Mr. Herrick was involved in the fight. And I guess my question would be, what was it? Is there any indication that he's being pressured then? There is, Your Honor. So it's undisputed in the record. And the evidence shows that that same arrest warrant that Officer Bannister said that he would ignore in return for Mr. Garlick providing a statement against Mr. Herrick, that same exact arrest warrant was used just a few days later to bring Zachary Garlick back into Detective Serafini. So that way she could question Zachary, even though he had been avoiding the officers. And I think it's reasonable for a jury to infer that he was avoiding the police officers because he didn't want to provide another false statement against Mr. Herrick. They use that same exact arrest warrant to bring him in. They handcuffed him and asked him to provide a second statement. And then they handcuffed him and brought him back into the courtroom to provide another false statement against Mr. Herrick shortly thereafter at his felony hearing. And the other part that I wanted to just touch on briefly before my time expired is that the significance of the voice article that was published in the middle of September of 2016. Even if this court doesn't find that it can look at the contents of that article and Zachary's public recantation, the contents based on hearsay, it could still look at it as the effect on the listener. It would be an exception to hearsay because Officer Bannister admitted during his deposition that he knew about the article and he knew generally that it included a recantation for Zachary Garlick. He was questioned by his supervisor about that recantation and whether it was true. What is your theory? What is your theory about why the officers would have coerced him to accuse the plaintiff? Well, I see that my plaintiff to be accused. I see that my time has expired. May I agree with your honor's question? It's actually thank you. Thank you. We'll keep you up here as long as we need you. Okay, thank you. So your honor, that is truly a mystery in this case, why these officers did what they did. What I can say is that Mr. Harry is somebody who ran for public office as an 18 year old. He was very well known within the community, and he ran against an individual named Carl Paladino, who's well known in the western New York area and well known throughout New York State as a political pundit. Somebody who has gone for office multiple times. Is any of that in the record? Yes, it's in the record because there's there's allegations that there are statements from Mr. Harry during his 50 age testimony. And I believe we actually include some statements in his affidavit as well. And the other thing that I would say, your honor, is after that election took place and Mr. Mr. Harry lost, he became well known to the police officers. He threw quite a few parties at his residence. He had quite a few run ins with these police officers. And when they showed up at his house that day, they knew who he was and they were looking for an excuse to arrest him. So that that is back up on a couple of facts, things that you have mentioned. So I'm hearing the idea of the lack of arguable probable cause to come from a few things that you just said. One was the intoxicated witnesses. One was the the the arrest warrant. You would not argue that that we can't use those. Right. You would not argue that either of those that those things don't in all that there's no per se rule saying that those things can't be probable cause. Right. Certainly intoxicated witnesses accounts can furnish. Certainly threats to execute a valid arrest warrant are not always coercive. And you wouldn't dispute that police officers are allowed to credit certain witness accounts over others. Is that right? That's that's absolutely right, your honor. And if any of if any one of those issues was viewed in a vacuum, I do believe that this case would would the outcome would be different. But here we have all of those things that you just discussed right there. And then we also have the fact that Zachary Barlow providing a false name to police officers. Why they decided to believe everything he said after they gave after he gave police officers a false name will always be a mystery. Right. Those are all things that happen after. Right. I mean, part of the issue that I that I think is legally significant is that a number of the things that you are suggesting about other people saying, oh, he didn't do it. You know, him saying that he was protesting, that he was innocent. Those all occurred after he was told he was under arrest and handcuffed. Right. So don't we need to be focusing on what the police had beforehand to assess the arguable cause? Absolutely. As it pertains to our false arrest claim, that is 100 percent correct. But we do have a malicious prosecution claim, your honor. And so even after Mr. Herrick was arrested, probable cause had to persist throughout the duration of the prosecution and probable cause in the form of believing that they could have successfully prosecuted Mr. Herrick. It is a different problem. Where do you get that from? Probably the officers doesn't doesn't need to believe the accusing witness. The question is just, is it probable cause? Does it provide probable cause? The officer can have doubts about it. If there's probable cause, it's the officer's duty to arrest. To arrest, but not to prosecute your honor. Moving forward with the criminal charges is different than arresting an individual when they believe that they have credible witnesses that come forward to incriminate somebody. When there are facts that are determined, and this is set forth by the Second Circuit and allowed first sheet. When the police officers learn of facts after an arrest that undermine probable cause, the police officer no longer has probable cause. And for malicious prosecution purposes, they wouldn't have arguable probable cause either. So we do believe that there's precedent from the Second Circuit saying that probable cause must persist throughout the prosecution. And any facts that are learned subsequent to an arrest that undermine probable cause would undermine probable cause for purposes of a malicious prosecution. We do that. That at the time of the prosecution, they must believe that they will win the prosecution. I do believe, Your Honor. I do believe that that is the state of the law. What case says that? I believe that that has been set forward in the law. First, you talk a case. I also believe that in Curley versus Village of Suffern, Curry versus city of Syracuse, Del Falco versus MTA bus company. I do believe that the Second Circuit has set forward that standard for probable cause with regard to a malicious prosecution case, Your Honor. Can I interject? I'm sorry. We need to be hearing from the council. Thank you. Thank you. Thank you. Mr. Lee, you've got your time. Good morning, Your Honors. David Lee, Assistant Corporation Counsel on behalf of the defendants. I think the fundamental flaw in plaintiff's argument is that while there may have been different accounts given to the police at the crime scene about what happened, none of those, that's not actually creating material issue of fact. Because to look at what facts are material, we look at the probable cause standard. And that the probable cause standard doesn't require the police to actually weigh evidence and try to figure out who is credible, who isn't credible. So what the police did look at is what information they had regarding Mr. Herrig's involvement in the fight. And that came from Zachary Garlick. And it came on two different occasions. It came on a vert. So are you conceding that if we find that Zachary Garland's testimony was coerced, then there might be a tribal question? If you find that Zachary's testimony was coerced, which statement, Your Honor? Well, in other words, if it's to be credited that the police knew that, and I'm not saying we did. But if we find that the way it was portrayed in the article, that he basically made it up because he was being coerced by the police. And the police therefore knew that he wasn't the one that did it. Do we now have a tribal question? I'm just trying to figure out how much we have to answer the issue of the evidentiary challenge with respect to the Parlato article. Yeah, I would note on the evidentiary challenge, and I will get to your question, Your Honor. But the court will review those evidentiary rulings for manifest error. And I don't think that these evidentiary rulings by the district judge were— Okay, but let's take these in pieces, right? So are you conceding that there's a tribal issue if we find that it was coerced? If there was evidence that the statement was coerced, which— Can I just ask, Your Honor, just a clarifying question, which exact— Because Zachary gave, I think, four statements to police. How about the first one, the deposition? Is there evidence that the deposition was coerced? That's the first statement, right? Yeah, and there is no statement. There is no evidence that the first statement was coerced. What about the argument that Mr. Harrick heard the police yelling at him about a warrant? No, I don't think so, Judge, because with the warrant issue, it's well settled that it's not coercive for the police to use a threat of arrest if they actually have a valid basis to arrest you. So that wouldn't be coercion. But particularly when you—the question whether it was coerced, we don't know. The fact that they were yelling at him, perhaps he was saying, I don't know anything. I didn't see anything. Don't ask me any questions. I know nothing. And they yelled at him, we're going to arrest you unless you tell us what happened. But that's different from saying we're going to take steps against you unless you accuse Harrick of having done this. Absolutely, Judge. You wouldn't contest that if there was evidence that the police coerced him to accuse Harrick, that that would not amount to his statement, okay, I accuse Harrick. That would not be probable cause. I would agree with that, Judge, but there is no evidence in the record of that either. The only evidence in the record of coercion relates to these warrants. And like I just said, it's not a coercive tactic for the police to use the threat of an arrest if there's valid— especially if he's simply claiming not to have any information, not to—being uncooperative, I didn't see anything. That doesn't amount to a coercion to accuse Harrick of having committed the assault. Yeah, that's correct, Judge. Is there any evidence—is there a tribal issue as to whether Zachary's statement or deposition was reliable because at some point he later said he had drank a quarter of a bottle of vodka or whatever the amount was? No, I don't think so, Judge, and that really can't be the standard because a lot of times when there is an incident such as this, there is alcohol involved, unfortunately. That's probably not uncommon if there's a fight for there to be alcohol. And so when the police show up, they have to investigate. Of course they're going to be talking to witnesses who drank. So the standard is not did you drink? The standard is did you drink so much that you were so incapacitated to make your information you give to the police unreliable? And there's no evidence of that in this record. In fact, it's the opposite. It's that Zachary was able to give a supporting deposition. And there's just no evidence that he was so intoxicated that he couldn't accurately recall the events that took place. What about the evidence that there were witnesses shouting that he didn't do anything, that Austin didn't do anything, he wasn't in the fight? I think that goes back to my original point, Your Honor, is that there is evidence that he was involved in the fight. And it would, I think, not be great case law if the probable cause standard all of a sudden became, well, because there were conflicting accounts of what happened, the police can't arrest, even though there is probable cause to arrest somebody based on other accounts. So that's not the standard and it can't be the standard. What about the arguments regarding the striking of the affidavit? How do we respond to them? Is this, Your Honor, are you referring to plaintiff's affidavit or the parlato affidavit? Well, I was referring to the plaintiff's affidavit. But I would ask you to get to the parlato affidavit. Yeah. Okay, so with respect to the plaintiff's affidavit, the district court struck plaintiff's statement that he was not involved in the fight. And the reason the district court did that is because in his 50-H testimony, it was pretty clear he testified he was involved in the fight. Now, he testified that he tried to break it up, too, but it seems also that he was definitely involved. He was bear hugged or he bear hugged somebody. But in any event, he was more involved in the fight than just being like a peacemaker. That's the way I read his 50-H testimony. That's the way that the district court read his 50-H testimony. And I think that's why the district court properly struck that comment about not being involved in the fight. Okay, and so the parlato statements at issue is something like I was coerced by arresting officers. They wanted to incriminate Herrig. They at least asked me if Herrig did it, and they wouldn't let me see my cousin unless I told them that Herrig did it. If we decide that that should have come in, I mean, so I have two questions. I'm going to ask you to tell me why that shouldn't come in. But if we decide that that comes in, do we have a triable question? Well, if there's – it depends how you construe that evidence, Judge, I guess, if you think that's evidence. Well, I mean, I thought you just conceded to Judge LaValle that we would have a triable question if something like that came in. Do you still stand by that? I do, Judge, yes. Okay, so now tell me why we don't let that in. Because there's no circumstantial guarantees of trustworthiness. I mean, what plaintiff is relying on here in the parlato affidavit is the residual or catch-all exception to the hearsay rule, which is rarely invoked, first of all. Secondly, this – well, we're not talking about the recantation, are we? We're talking about the other things you just mentioned, Judge. But there's no circumstantial guarantees of trustworthiness that would make these hearsay statements admissible under that residual exception. There's just no – Is the parlato – did he say to parlato, I never told the police that it was Austin, or did he – is he now saying what I told the police was not accurate? I'm sorry, Judge, I didn't follow that. Yeah. Who's he – So Zachary made statements to parlato. Did he say I never told the police that Austin did it, or did he say what I told the police was wrong and I take back what I told the police? Yeah, the second one. And if it's the second one, then it doesn't undermine the fact that that's what he said to the police on the evening in question. Yes, that's correct, Judge. And the – as far as probable cause to prosecute the case, it does not turn on whether what Zachary's initial statements, whether they constituted probable cause, because at this point, when you're talking about prosecuting the case further, then you look at all the evidence that has been collected, whether any of that evidence is sufficient to justify the prosecution. And so you're looking at a completely different question from the question of the initial – of what it was that furnished probable cause for the initial arrest. Yeah, that's true, Judge. There's absolutely continuing probable cause in this case. Since the arrest, the probable cause was bolstered by the statement that Zachary gave to Detective Serafini, I think, in the police interview, and then bolstered for a second time in the felony hearing testimony of Zachary, where Zachary again talked about plaintiff's involvement in the altercation. Unless the court has any other questions, I don't have anything further. Okay. So, Mr. Dunford, you've got one minute. Thank you. Thank you. So just going back to your first question, Your Honor, of whether or not there would be a tribal issue if this court were to find that Zachary Garlick – his statement was coerced, I believe right there there would be a tribal issue, in fact. And the reason being is because probable cause is only furnished when the statement comes from a reasonably trustworthy source. If the officers coerced the statement from Zachary, then they knew that the statement was fact. What about Judge LaValle's question? Is there any evidence that Zachary was coerced to finger Mr. Harrod? I'm sorry. Could you ask the question again, Your Honor? I think Judge LaValle was asking a question as to whether there's any evidence. Assuming there was coercion, is there any evidence that the police coerced Mr. Garlick to implicate Mr. Harrod? Yes, Your Honor. The fact that Mr. Garlick was away from the other witnesses for 10 minutes with the other officers screaming at him, and then the police officers coming back and arresting only Austin Harrod. You know, I do believe that that is substantial evidence. Even if that's evidence that they coerced him to furnish information as opposed to not furnishing information, it doesn't give us evidence that they coerced him to name Harrod as the assailant. Well, I disagree, Your Honor, because the officers did come back and incriminate only Austin Harrod. I would say also there is evidence that the officers… If he named Harrod, that's who they would come and arrest if they were doing their duty. But if they screamed at him and say, you better remember something about, you better tell us what happened here or we're going to arrest you on these warrants and so forth. No, we're not taking your answer that you didn't see anything, you don't know anything. You better tell us. And that qualifies as coercive. That's not coercion to identify Harrod. And the fact that they went and arrested Harrod after he spoke follows from the fact that he named Harrod. But it doesn't show that they told him, you have to name Harrod or we're going to make things bad for you. I mean, there's no evidence… I understand your… There's no evidence that the police officers who were yelling at Garlick, tell us it was Harrod, right? Well, I understand your points, Your Honor, but I do believe that there is evidence that the police officers were specifically trying to incriminate Austin Harrod. That's based off of a Parlato affidavit in the Ark Voice article where Zachary Garlick gave his public recantation and said that the officers basically said, tell us that it was Austin or else we will arrest you. That's essentially what he said in the Ark Voice article. So if Your Honors were to consider that evidence… That had nothing to do with the probable cause at the time of the arrest. That has only to do with probable cause for going ahead with the prosecution later. And there, as we were saying a moment ago, it doesn't turn solely on Zachary's initial statement. It turns – it would turn on all the evidence available to the people at the time, at the later time. I – that understood, Your Honor, but there was no evidence. Besides Zachary Garlick's statement, there was no other evidence to incriminate Austin Harrod. There was no corroborating evidence. That's the entire point of our probable cause analysis is that it was just Zachary Garlick's statement. He was an unreliable witness, and everyone else said that Austin had nothing to do with this fight. So there was no evidence besides Zachary Garlick's statement. If they had reason to believe that Zachary Garlick was not a truthful witness, then they simply did not have probable cause to arrest Austin Harrod. So how do you get this in? Like your colleague said, a pretty compelling case about the residual exception. Why do we consider it? Well, for one, it's a declaration against Zachary Garlick's penal interest. He provided multiple sworn statements saying that Austin was involved in this fight, and now he's making a public statement that anybody can see, and the City of Buffalo police officers did see, saying that he lied to police. So he could have been charged with perjury. Right there is provide circumstantial guarantees of trustworthiness. Also, we have Jennifer Paul stating that she had subsequent discussions with Zachary Garlick where Zachary Garlick said the same exact thing. He said that he was coerced to provide this statement to police officers and that he was drunk at the time, and he fell for their coercion. And the other thing that I would say, Your Honor, is that this statement was published twice, by an investigative journalist who is pretty well known. He published and was involved with producing The Vow, which is an HBO series. He's a well-renowned investigative journalist, and he said in his affidavit, it is critically important for an investigative journalist to provide truthful and honest information. That is what his entire profession is based off of. And he wrote in his affidavit that he recalled the conversation with Zachary Garlick. He recalled the same exact statements that are in the newspaper article. It was published twice. So we do believe that there are circumstantial guarantees of trustworthiness, and we believe that the residual hearsay exception was made essentially for situations exactly like this, where there is an unexpected death by a 22-year-old. The against penal interest exception to the hearsay rule doesn't turn solely on whether it's conceivably against penal interest. It has to be according to the terms of the rule in circumstances where the person would not have made such a statement unless it were true. And I don't see how that's satisfied here, because for somebody later to want to recant and say, oh, you know, I was coerced when I accused somebody, that's not the kind of thing that no one would say unless it was true. Well, I actually disagree, Your Honor, and the reason— I disagree, Your Honor, and the reason that I disagree is because Zachary Garlick was friends with Austin Harris. Zachary was friends with any of the individuals who were involved with this August 25th incident. I don't think that he would be making these types of public statements unless they were true. His credibility is on the line. No, no, no. Making the subsequent statement, the fact that he was a friend of the person he had accused, is all the more reason why he would say, I was coerced when I made that statement. That is true, Your Honor, that Zachary Garlick would certainly have that motive to do so, but we believe that there is other evidence to support that this is a trustworthy statement. This is something that the court could— Yes, but the against penal interest exception specifically states that it has to be in circumstances where the penal interest is such that the person would be unlikely to have made the statement unless it were true. And the fact that your prior accusation of a friend that you now say, oh, I was coerced to say that my friend was involved in this, that is not the sort of statement that one wouldn't make unless it was true. Quite to the contrary, it would be very likely that one would make it so as to try to help one's friend after having made things worse for him earlier. Well, certainly, but I think we also have to remember, Your Honor, that it was Zachary Garlick's cousin who was initially assaulted, and the police officers would not allow Zachary Garlick to go and see Brett Garlick at the hospital until he provided a statement to the police officers. So there are certainly circumstances here for us to say, you know, that Zachary Garlick would not have made that statement initially, but for the police officers' coercion in preventing him from going to the hospital to go see his cousin who was severely injured. So that is our position, Your Honor. We do believe that there are circumstantial guarantees of trustworthiness and that the court can consider those articles. But even if it doesn't, we believe that there is more than sufficient evidence for this court to find that there is an accomplice. You're confusing two questions. The circumstantial guarantees of trustworthiness has to do with the subsequent statement, the subsequent statement that he, the one that recants, the one that in speaking to Parlato, the reporter, the recantation of his earlier accusation. That's where the circumstantial guarantees of trustworthiness arises, right? Certainly. Any police officer could have and in fact did find his statements. He could have charged him with perjury because of the prior statements that he had made incriminating Austin Herrig. So that's where we believe that the circumstantial guarantees of trustworthiness come in with regard to, you know, a declaration against his penal interests, a public statement like that. He's basically putting it on display for the entire world to see that he previously was a liar and that he swore to things that were not true. So that's we don't believe that he would have made that subsequent statement. It wasn't true. There would be no reason for him to put himself into that kind of legal jeopardy if it wasn't true. OK. Thank you so much. We will take the case under advisement. And that concludes the argument on the cases on the calendar today. We have one case on submission. That's the United States v. Okereke, number 21-1933. Thank you so much to all of the clerk's office for managing the docket today and to the court security officer for keeping us safe. And I will ask to adjourn the court. The court is adjourned.